IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

PAMELA WILLIS,      *

                 *

     Plaintiff,      *

                 *         Civil No. TMD 15-2301

v.      *

                 *

CAROLYN W. COLVIN,      *

Acting Commissioner of Social Security,      *

                 *

     Defendant.      *

              ************

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Pamela Willis seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 13).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## <u>Background</u>

Plaintiff was born in 1954, has a high-school education, and previously worked as a hair stylist and manager.  R. at 22.  Plaintiff protectively filed applications for DIB and SSI on September 11, 2012, alleging disability beginning on January 1, 2011, due to head trauma, bipolar disorder, depression, anxiety, and a lack of taste and smell.  R. at 206-15, 219, 250.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 73-130, 137-41.  On December 11, 2014, ALJ Jennifer M. Long held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 25-72.  On January 14, 2015, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of January 1, 2011, through the date of the decision.  R. at 11-24.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 4, 2015.  R. at 1-4, 9.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On August 6, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Summary of Evidence

**A.    State Agency Medical Consultants**

On January 11, 2013, a state agency consultant, Michelle Butler, Psy.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairment under Listing 12.04 relating to affective disorders (R. at 78, 88). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  Dr. Butler opined that, under paragraph B of Listing 12.04, Plaintiff's mental impairment caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 78, 88.  Dr. Butler did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings.  R. at 78, 88.  Dr. Butler thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 79-80, 89-90) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods and to (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  R. at 80, 90.  Plaintiff otherwise was not significantly limited.  R. at 79-80, 89-90.

On August 2, 2013, another state agency consultant, David Tessler, Psy.D., again used the PRT to evaluate Plaintiff's mental impairment under Listing 12.04.  R. at 102-03, 115-16. Dr. Tessler opined that, under paragraph B of Listing 12.04, Plaintiff's mental impairment caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration,

persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 102, 115. Dr. Tessler did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04. R. at 102, 115. Dr. Tessler thus assessed Plaintiff's mental RFC (R. at 104-06, 117-19) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) interact appropriately with the general public; (4) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (5) respond appropriately to changes in the work setting. R. at 104-05, 117-18. Plaintiff otherwise was not significantly limited. R. at 104-06, 117-19.

**B.** **Hearing Testimony**

**1.** **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in her decision:

> At the hearing, [Plaintiff] testified that she desired to do continuing education. She also testified that she is responsible for collecting weekly rent and making weekly deposits to the owner of the home where she lived with her boyfriend and two roommates. Each day, she drives her boyfriend to his work site. She leaves the van with him, and she goes into a center where she works on the computer. Some days, she takes public transportation to a doctor's appointment. She also testified to using her Metro access and smart trip card to take public transportation.

R. at 19; *see* R. at 31-63, 71.

**2.** **VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could not perform Plaintiff's past

relevant work but could perform the unskilled, medium[2] jobs of laundry worker, packer, or kitchen helper.  R. at 68-69.  A person absent from work two days per month would not be able to maintain employment.  R. at 69.  A person's being "off task" resulting in a loss of productivity of 15% would not be able to work.  R. at 69.  According to the VE, her testimony was consistent with the *Dictionary of Occupational Titles*.[3]  R. at 70.

## III

## Summary of ALJ's Decision

On January 14, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 1, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a laundry worker, packer, or kitchen helper. R. at 16-23.  The ALJ thus found that she was not disabled from January 1, 2011, through the date of the decision.  R. at 23.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* §§ 404.1568(a), 416.968(a).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

In so finding, the ALJ found that,

> [w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate
> difficulties.  A mental status examination found clear and goal oriented thought
> processes, no hallucinations, good concentration and memory, good general fund
> of knowledge, intact judgment, and preserved capacity for abstract thinking [R. at
> 323].  She is capable of following simple instructions such as recipes [R. at 271].
> However, she does report difficulty concentrating and completing tasks [R. at
> 322, 384, 582].

R. at 17.

The ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can perform simple, routine and repetitive tasks with occasional decision-making and judgment, and only occasional changes in the work setting."  R. at 18.  The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairment could reasonably be expected to cause symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. at 18-19.  The ALJ found that Plaintiff's

> activities of daily living go beyond limitations that would preclude work and
> include personal care, preparing meals several times a week, laundry, washing
> dishes, going outside daily, walking, driving, using public transportation,
> shopping in stores, handling money, watching television, social networking,
> sewing, dancing, eating meals out, watching football with friends, talking and
> texting, and going to sports bars.

R. at 19 (citing R. at 270-73).

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work

activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R.  §§ 404.1521(b), 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 12-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work.  *Id.* at 6.  In

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

particular, she contends that, although the ALJ found that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment, instead limiting her to simple, routine, and repetitive tasks.  *Id.*  According to Plaintiff, substantial evidence thus does not support the ALJ's RFC assessment.  *Id.* at 7.  For the reasons discussed below, Plaintiff's assertion is unavailing.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform

them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

not address. *Id.* at 637; *see Monroe v. Colvin*, __ F.3d __, No. 15-1098, 2016 WL 3349355, at

*9-10 (4th Cir. June 16, 2016) (remanding because ALJ erred in not determining claimant's RFC

using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then

concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that, in assessing her RFC, the ALJ failed to consider adequately her

moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*.

Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 12-1.  In *Mascio*, the Fourth Circuit held that "an

ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by

restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780

F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

"[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter

limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.*

The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate

limitation in concentration, persistence, or pace at step three did not translate into a limitation in

the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step

three finding that a claimant suffers from moderate difficulties in concentration, persistence, or

pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain

why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-

2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D.

Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of

physical and mental impairments which, if met, are conclusive on the issue of disability.'  A

claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas:  (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be

disabled.   If not, the reviewing authority will then assess the claimant's RFC.   *Id.*
§§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered
and must include a specific finding as to the degree of limitation in each of the four functional
areas."   *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20
C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).   With regard to the four functional areas, which
correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily
living* include adaptive activities such as cleaning, shopping, cooking, taking public
transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's]
grooming and hygiene, using telephones and directories, and using a post office."   20 C.F.R. pt.
404, subpt. P, app. 1, § 12.00(C)(1).   "In the context of [the claimant's] overall situation, [the
Commissioner assesses] the quality of these activities by their independence, appropriateness,
effectiveness, and sustainability.   [The Commissioner] will determine the extent to which [the
claimant is] capable of initiating and participating in activities independent of supervision or
direction."   *Id.*   Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact
independently, appropriately, effectively, and on a sustained basis with other individuals.   Social
functioning includes the ability to get along with others, such as family members, friends,
neighbors, grocery clerks, landlords, or bus drivers."   *Id.* § 12.00(C)(2).   Further,
"[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and
concentration sufficiently long to permit the timely and appropriate completion of tasks
commonly found in work settings."   *Id.* § 12.00(C)(3).   "On mental status examinations,
concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial
threes from 100.   In psychological tests of intelligence or memory, concentration is assessed

14

through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[e]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ's inclusion of a limitation in her RFC assessment and in her hypothetical question to the VE to "occasional decision-making and judgment" and only "occasional changes in the work setting" (R. at 18, 68-69) accounts for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Wade v. Comm'r of Soc. Sec.*, Civil No. SAG-14-3618, 2016 WL 245528, at *4 (D. Md. Jan. 21, 2016) ("[I]n his RFC assessment, the ALJ included a restriction to address those [moderate limitations in maintaining concentration, persistence, or pace], specifically limiting [the claimant] to 'a low stress job, defined as avoiding production standards, avoiding changes, and avoiding judgment changes.' While *Mascio* provides that a limitation to unskilled work alone is insufficient to address moderate difficulties in

concentration, persistence, or pace, here the ALJ included another limitation that clearly accounts for [the claimant's] 'no more than moderate' difficulties in that functional area. Accordingly, I find no error warranting remand under *Mascio*." (citation omitted)); *Rayman v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) ("[T]he limitation to an environment with few changes and no production quotas assures that [the claimant] is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace. Thus, the ALJ accounted for any time that [the claimant] would be off-task due to his limited ability to maintain focus."); *Fowler v. Colvin*, No. 3:14CV855 (HEH), 2015 WL 8488971, at *7 (E.D. Va. Oct. 13, 2015) ("Plaintiff argues that the ALJ's hypothetical contravenes *Mascio*. . . . Though he did not explicitly use the terms 'pace' or 'persistence' in the [mental] limitations, the ALJ properly included Plaintiff's psychological deficiencies in the hypothetical posed to the VE, despite Plaintiff's argument to the contrary. Specifically, the ALJ's hypothetical described a worker who could not work more than two hours at a time without a break. The ALJ then further limited the work to a low stress setting, defined as having only occasional independent decision-making and occasional changes in the workplace setting. Furthermore, the work could involve only occasional interaction with the public. But, Plaintiff's argument ignores these further limitations posed to the VE in the hypothetical. And, these limitations mirror those found by the ALJ in the [RFC] assessment. Substantial evidence, examined above, supports both the [RFC] determination and the hypothetical posed to the VE. Therefore, the ALJ properly addressed Plaintiff's psychological deficiencies and did not err." (citations omitted)), *report and recommendation adopted*, No. 3:14CV855-HEH, 2015 WL 8484443 (E.D. Va. Dec. 9, 2015); *Abee v. Colvin*, No. 1:14-CV-76-GCM, 2015 WL 5330452, at *6 (W.D.N.C. Sept. 14, 2015) ("[T]he ALJ's findings specifically

addressed the Plaintiff's ability to stay on task as required by *Mascio*.  The ALJ accounted for the Plaintiff's limitation in pace by restricting him to 'sedentary work,' and he accounted for his limitation in concentration and persistence by restricting him to a low-stress work environment with occasional decision-making, occasional changes in the work setting, and occasional interaction with the general public.").  Plaintiff's argument that remand is warranted in this case under *Mascio* thus is without merit.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  The Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.

Date: June 22, 2016                                  _____/s/_____
                                                                Thomas M. DiGirolamo
                                                                United States Magistrate Judge